UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jodie Cowan, *on behalf of herself and all others similarly situated*, | Civil Action No.: 14-cv-00696 (WWE) |
| Plaintiff, | |
| v. | |
| GE Capital Retail Bank; and DOES 1-10, inclusive, | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STAY

Jodie Cowan (the "Plaintiff") submits this Memorandum of Law in Opposition to the Motion to Stay by Defendant GE Capital Retail Bank ("GE").

In this action, Cowan seeks relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (the "TCPA") which makes it unlawful to make any call "using any automatic telephone dialing system ["ATDS"] **or** an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 41 U.S.C. § 227(b)(1)(A)(iii) (emphasis supplied).

GE asks this Court to stay this matter until the Federal Communications Commission ("FCC") addresses five petitions which seek rulings on (1) the meaning of 'capacity' as used in the TCPA to define 'automated telephone dialing system' ("ATDS") (the "Capacity Petitions"), and (2) the meaning of "called party" as used in setting an exception to TCPA liability (the "Called Party Petitions"). GE alternatively asks the Court to stay the proceedings until resolution of a similar class action against it in the Southern District of California.

The Court should deny the request. The Capacity Petitions are not determinative: GE called Cowan with a prerecorded voice. (*See* Doc. No. 1, ¶ 17; Doc No. 14-1, ¶¶ 16-19).

Prerecorded calls to cellular phones are violations of the TCPA regardless of the capacity of the phone making the call.

But the Capacity Petitions would not warrant a stay in any event, as the FCC and numerous courts have already addressed this issue. Applying FCC rules, courts have held that the ATDS definition includes machinery that has the capacity to store or produce numbers and dial randomly, sequentially or from a database of numbers. *See e.g. Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275, *4 (S.D.N.Y., Feb. 28, 2014) ("'[T]he hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers.*'") (quoting *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 18 F.C.C. Rcd. 14014, 14092 ¶ 132, 2003 WL 21517853 (F.C.C., July 3, 2003) (the "2003 Order") (emphasis supplied by Court); *see also*, *Davis v. Diversified Consultants, Inc.*, 2014 WL 2944864, *5 (D. Mass., June 27, 2014).

Nor do the Called Party Petitions warrant a stay, as there are no novel issues needing agency expertise here. Both Called Party Petitions are by auto-dialers who seek relief from the clear prohibitions of the TCPA and its definition of "called party" under 47 U.S.C. § 227(b)(1)(A) & (A)(iii). This is a legal question which has been addressed, and decided upon, in a long line of cases. Defendant misapplies the primary jurisdiction doctrine, which is limited to instances where there is a complicated, often technical issue, which a particular agency has a special expertise and jurisdiction to resolve. No such issues exist here, and even if there were, the FCC itself has already held in favor of the plain meaning of the language in the TCPA that a "called party" is, in plain English, *the person who is the actual subscriber and is actually called* and not the person whom the auto-dialer would have called, had it been more careful.

Moreover, GE is overly optimistic about what a petition to the FCC entails. Although GE represent that FCC rulings will be made in the near future and will resolve "legal issues" at the heart of this case, it is completely uncertain when the FCC will rule on these petitions or if it will rule at all. Whether the FCC decides to rule on a petition is entirely discretionary. Indeed, the FCC has acted only upon a handful of the thousands of submissions it has received. Further, even if the FCC were to hear both petitions and issue new rules that favor autodialers, there is no guarantee that those rules would apply retroactively to GE's conduct here.

The issues the petitions address are not novel, hypertechnical, nor do they concern matters outside this Court's expertise, and the likelihood that the FCC will act upon the petitions is remote. Plaintiff respectfully requests that the Court deny the motion to stay.

## **FACTS**

Plaintiff's cellular telephone number is 514-xxx-2718. (Doc. No. 1, ¶ 15; Doc. No. 14-1, ¶ 14). In or around March 2014, Plaintiff began receiving telephone calls from Defendant at this phone number. (Doc. No. 1, ¶ 15; Doc. No. 14-1, ¶ 14). "When answering Defendant's calls, Plaintiff heard a mixed prerecorded and artificial message and interactive prompt." (Doc. No. 14-1, ¶ 16; *see* Doc. No. 1, ¶ 17 (also alleging prerecorded message)). "The prerecorded portion described that the call was in regards to a particular person and asked the Plaintiff to press a digit on her phone to continue with the call." (Doc. No. 14-1, ¶ 17). "The artificial component consisted of computerized text to speech in which a computerized, i.e. artificial, voice" stated the name "Marsela Murana." (Doc. No. 14-1, ¶¶ 18-19). At no time did Plaintiff ever provide her cellular phone number to Defendant. (Doc. No. 1, ¶ 19; Doc. No. 14-1, ¶ 26). At no time did Plaintiff ever enter into a business relationship with Defendant. (Doc. No. 1, ¶ 20; Doc. No. 14-1, ¶ 27). At no time did Plaintiff provide Defendant with prior written consent allowing it to call her cellular phone. (Doc. No. 1, ¶ 21; Doc. No. 14, ¶ 28).

# ARGUMENT

## I. The Petitions Regarding 'Capacity' are Not Determinative

GE argues that this case should be stayed due to four petitions to the FCC regarding the definition of 'capacity' as used to define ATDS. The TCPA makes it unlawful to make any call "using any automatic telephone dialing system ["ATDS"] **or** an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 41 U.S.C. § 227(b)(1)(A)(iii) (emphasis supplied). Here, Cowan complains of receiving calls from GE featuring a prerecorded voice on her cell phone. Whether the calls were also made with an ATDS is not, in and of itself, determinative. *See Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703, *10 (W.D.N.Y., Sept. 15, 2011) ("Further, even if it never used an ATDS, Defendant also could be liable under the TCPA for placing calls to Plaintiff's cell number using an artificial or prerecorded voice."). Accordingly the Capacity Petitions do not warrant a stay.

## II. Stay is Not Warranted under the Doctrine of Primary Jurisdiction

Inasmuch as the Court finds the petitions to be potentially determinative, a stay is not warranted. The doctrine of primary jurisdiction "allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc. v. AT & T Co.,* 46 F.3d 220, 222–23 (2d Cir. 1995) (internal quotation marks and citation omitted). This practice of judicial deference to agency expertise is concerned with "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 63, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956), quoted in *Ellis v. Tribune Television Co.* 443 F.3d 71, 81 (2d Cir. 2006).

While "[n]o fixed formula has been established for determining whether an agency has primary jurisdiction" to consider issues within its recognized expertise that are pending before the court, *Western Pacific Railroad Co.,* 352 U.S. at 65, the analysis generally focuses on the following four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

*Ellis,* 443 F.3d at 82 (citing *Nat'l Commc'ns Ass'n, Inc.,* 46 F.3d at 222)). The Second Circuit has noted that "[t]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id.* at 223.

The primary jurisdiction doctrine is not as sweeping as it may project. It "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit," but instead "is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Jovel v. i-Health, Inc.*, 2013 WL 5437065, *8 (E.D.N.Y., Sept. 27, 2013) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). Therefore, the doctrine should be applied sparingly as it often results in expense and delay and should not be invoked unless a question requires an agency's expert consideration. *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988); *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir. 1984).

Courts have denied motions to stay based on these same FCC petitions. *See, e.g.,*

*Holcombe v. Credit Protection Ass'n, LP*, --- F. Supp. 2d ---, 2014 WL 4252277, *2-3 (M.D. Ga., August 28, 2014) (denying motion to stay based on petitions to FCC regarding "whether dialing equipment must have a present ability to generate and dial random or sequential numbers in order to qualify as an ATDS . . ."); *Bates v. Dollar Loan Center, LLC*, 2014 WL 4231302, *3 (D. Nev., August 26, 2014) (denying motion to stay based on the "CI Petition").

### a. The Questions Presented are Legal Questions Within this Court's Experience and Expertise and Not Particularly Within the Agency's Expertise

The questions presented by the Petitions are legal questions – applying statutes and rules to facts – within this Court's experience and expertise. "Primary jurisdiction does not extend to a legal question that is within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of the particular case." *Nat'l Commc'ns Ass'n, Inc.*, 46 F.3d at 223. When a "matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility." *Baykeeper v. NL Industries, Inc.,* 660 F.3d 686, 691 (3d Cir. 2011).

### 1. Capacity Petitions

Here, the Capacity Petitions concern legal issues that have already been addressed by the FCC and courts. ATDS are defined in the TCPA as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC has already ruled, twice, that an ATDS includes "any equipment that has the specified capacity to generate numbers and dial them without human intervention, regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *2003 Order*, 18 FCC Rcd. 14014, 14092 (2003) ("2003 TCPA Order"). The FCC affirmed this position in 2012 *In the Matter of Rules*

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd 559 (Jan. 4, 2008) (the "2008 Order").[1] There, ACA International, a trade association for the debt collection industry, asked the FCC to revisit its previous determination on the statutory definition of an ATDS. *Id.* at ¶ 8. The FCC declined to do so, citing the considerations in the *2003 Order. Id.* at 566–67, ¶¶ 13-14. By stressing that a system which operates by dialing numbers from calling lists without human intervention is an ATDS, the FCC re-affirmed its statutory interpretation of an ATDS as a system that dials from lists or from databases and does not necessarily need the capacity to randomly or sequentially generate the telephone numbers to be dialed. Courts have had no issue applying the TCPA's definitions and the FCC's prior rulings to the facts of cases. *See Echevvaria*, 2014 WL 929275 at *4-5; *Davis*, 2014 WL 2944864 at * 4.

### 2. Called Party Petitions

The same holds true for the Called Party Petitions. The TCPA prohibits:

> [A]ny call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii). The FCC has ruled:

> [A]utodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party [and] such calls are permissible. We conclude that the provision of a phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act* of 1991, 23 FCC Rcd. 559, 564 (F.C.C.2008).

---

[1] Attached as <u>Exhibit A</u> to the Lemberg Declaration.

Defendant says that courts are divided as to the meaning of 'called party' and cites one case for the proposition that 'called party' means 'intended recipient.' (Doc. No. 7-1, p. 19). To the contrary, that 'called party' means the "intended recipient" has "been squarely rejected in no less than twenty cases." *Olney v. Progressive Cas. Ins. Co.*, 2014 WL 294498, *3 (S.D. Cal., Jan. 24, 2014); *see Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir. 2014) (holding that called party does not mean intended recipient); *Osorio v. State Farm Bank, F.S.B.*, 746 F .3d 1242, 1251 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640 (7th Cir. 2012) ("'[I]ntended recipient' does not appear anywhere in § 227, so what justification could there be for equating 'called party' with 'intended recipient of the call'?"); *Fini v. Dish Network L.L.C.,* 955 F. Supp. 2d 1288, 1295-96 (M.D. Fla. 2013) (called party does not mean intended recipient); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 680 (S.D. Fla. 2013) (same); *Page v. Regions Bank,* 917 F. Supp. 2d 1214, 1218 (N.D. Ala. 2012) ("Simply put, this court agrees that a plaintiff need not be a 'called party' to assert a TCPA claim"); *Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888, 898 (E.D. Mich. 2012) ("Even if Morgan gave consent, the Defendants do not contend that *Plaintiff* actually provided consent to be contacted.") (emphasis in original); *Kane v. National Action Financial Services, Inc.*, 2011 WL 6018403, *7 (E.D. Mich., Nov. 7, 2011) (holding plaintiff was "called party" within meaning of TCPA where defendant "intended to, and did, call [plaintiff's] personal cell phone number"); *D.G. ex rel. Tang v. William W. Siegel & Associates, Attorneys at Law, LLC*, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) (called party does not mean intended recipient); *Gutierrez v. Barclays Grp.*, 2011 WL 579238, *5 (S.D. Cal., Feb. 9, 2011) (same).

Further, the FCC does not even have the authority to make the changes GE hopes for. GE and the petitioners hope the FCC exempts from liability calls placed to wireless numbers of an

8

unintended recipient.  The FCC does not have authority to exempt calls to wireless numbers. Congress set forth the FCC's power to regulate under the TCPA at 47 U.S.C. § 227 (b)(1)(B) and (b)(2).  The TCPA differentiates between calls made to cellular phones, in which the consumer is charged for the call, and calls made to residential landlines.  The statute does not allow the FCC to make exemptions to the section prohibiting calls to cellular phones, whereas the statute allows the FCC to make exemptions to the section prohibiting calls to landlines. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting calls to cell phones other than those made for emergency purposes or with prior express consent of the called party) *and* § 227(b)(1)(B) (prohibiting calls to residential telephone lines unless the call is initiated for emergency purposes or is exempted by FCC rule or order).  Accordingly, the statute is unambiguous and does not allow for regulatory exemptions made to cellular phones.

There are strong policy considerations for Congress to keep the authority over regulating calls made to cellular devices, rather than delegate to the FCC.  Cell phones are kept on one's person and have become mobile computer devices. The usage and access to cellular phones implicate privacy considerations and potential additional restrictions. There is no such concern with landlines which serve numerous household members. As the United States District Court for the Southern District of Florida recognized:

> Practical realities support a distinction between residential and cellular lines. Residential lines are often shared by multiple users. An individual giving her home phone number to a creditor may also be giving the creditor her husband's, mother's or roommate's home number. Any of these individuals could answer the phone should the creditor attempt to call the line in an effort to collect the debt. Cellular lines, on the other hand, are personal to an individual—one person rarely answers another's cellular phone. Thus, the intended recipient and actual recipient of a call to a cellular line is most often the same person, making a broader exemption less necessary than for residential lines.

*Breslow v. Wells* Fargo *Bank, N.A.*, 857 F. Supp. 2d 1316, 1321 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

As set forth above, myriad courts have addressed the matter and the Federal Courts are empowered to enforce the TCPA. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012). Whether a called party is in fact the called party or an intended recipient has been ruled upon numerous times by courts and exempting such calls is not within the FCC's particular discretion. Despite Defendant's imputations of ambiguity, the questions in the instant matter are straightforward and there is no need for detective work of the FCC level to resolve them – numerous Courts have resolved these issues (and in Plaintiff's favor). Defendant and the petitioners merely dislike the result.

### b. There is No Danger of Inconsistent Rulings and Application to the FCC has Occurred

There is no danger of inconsistent rulings as the FCC has already addressed the issues the Capacity Petitions seek to revisit (*see 2003 and 2008 Orders*), and courts have overwhelmingly held that 'called party' does not mean 'intended recipient.'

The FCC receives numerous petitions on these issues. In this regard, Defendant presents the filing of five petitions as a rare phenomenon which merits stopping a federal litigation in its tracks. Defendant makes no attempt to actually explain the FCC petition process. The FCC has absolute discretion to act or not act on petitions submitted to it. The FCC explains the rulemaking process as follows:

> A person outside of the FCC files a Petition for Rulemaking (Petition) to suggest new rules or changes to existing rules. Unless directed otherwise in the FCC's Public Notice seeking comment on the petition, the public has 30 days from the date of the Public Notice to submit comments on whether the FCC should grant or deny the petition. After reviewing the comments received in response to the petition, the FCC issues an Order disposing of the petition, a Notice of Inquiry (NOI), or a Notice of Proposed Rulemaking (NPRM).

> \*\*\*\*
> After reviewing the comments received in response to an NPRM, the FCC issues either a Further Notice of Proposed Rulemaking (FNPRM) seeking additional public comment on certain issues in the proceeding, or a Report and Order (R&O). An R&O adopts new rules, amends existing rules, or states that there will be no changes. Sometimes the FCC issues a combined R&O and FNPRM.
>
> \*\*\*\*
> The FCC publishes summaries of FNPRMs and R&Os in the Federal Register, and also states when a rule change will become effective. A party can file a Petition for Reconsideration within 30 days of the date the summary of an R&O appears in the Federal Register. A Petition for Reconsideration formally requests the FCC to modify its ruling.

(quoting http://www.fcc.gov/guides/how-comment).

The FCC can dispose of, or decide not to act upon, a petition at any time throughout the process. No change whatsoever is the most likely outcome of an FCC petition. In the 12-year span from September 12, 2002, to the present, the FCC has received 53,915 submissions regarding the TCPA. (*See* The Lemberg Declaration, ¶¶ 5-6, Ex. B). The FCC has received an average of over 4,492 submissions regarding the TCPA each year, over 374 each month, and over twelve each day. (*Id*. at ¶ 6). Thus, only a handful of the many thousands of TCPA-related FCC filings result in any further action. And, even those "proposed" rulemakings are then subject to an additional period of review and comment before they might become binding. (*Id*. at ¶ 7). *See* http://www.fcc.gov /guides/how-comment. That process frequently takes several years.

Here, the *In re Communication Innovators* petition has been pending for over two years, the *In re YouMail* petition has been pending for 17 months, and resolution (if one even occurs) may take years more. *Nat'l Commc'ns Ass'n*, 46 F.3d at 225 ("Agency decisionmaking often takes a long time and the delay imposes enormous costs on individuals, society, and the legal system."); *Frydman v. Portfolio Recovery Associates, LLC*, 2011 WL 2560221, \*7 (N.D. Ill., June 28, 2011) (noting, with a touch of humor, that "[w]hether the FCC's . . . process is

completed this year, next year, or in the next century, the results of that process are likely of only limited utility for the Court to decide the issues in this case. Therefore, judicial economy will be served by proceeding with this case and letting the FCC's process run its own course."). Whether or not the FCC will actually address the petitions here or do so in a way that affects this litigation is entirely speculative. *See Meyer*, 2014 WL 1976664 at *2 ("The court will not stay this case while it awaits rulings that may never come.").

### III.     FCC Ruling Would Need Retroactive Effect to Apply to GE's Conduct

GE makes no argument that an FCC ruling would have retroactive effect to apply to its calls to Cowan. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468 (1988) (holding that agency regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations require it); *Aderhold v. Car2go N.A., LLC*, 2014 WL 794802, *8 (W.D. Wash., Feb 27, 2014) (declining to address impact of new FCC rules that did not apply to defendant's past conduct); *Frydman, LLC*, 2011 WL 2560221 at *7 (declining to refer case to FCC under doctrine of primary jurisdiction because any ruling would likely only be made on a prospective basis).

The test for retroactive effect was recently set forth:

> When an amendment merely clarifies rather than substantively changes existing law, the amendment must be given retroactive effect. . . . There is no "bright-line test" for determining whether an amendment clarifies, rather than changes, existing law. Courts have considered several facts in making this determination, including: "(1) whether the enacting body declared that it was clarifying an prior enactment; (2) whether a conflict or ambiguity existed prior to the amendment; and (3) whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history."

*Directory Assistants, Inc. v. Healthmart USA, LLC*, 2013 WL 1748083, *2 (D. Conn., April 23, 2013) (citations omitted).

As to the first and third factors, it is unclear what, if anything, the FCC will do in response to the petitions. *See Meyer v. Receivables Performance Mgmt., LLC*, 2014 WL 1976664, *1 (W.D. Wash., May 14, 2014) ("It is one thing to hope that the FCC will issue new rules that favor debt collectors like RPM. It is another to hope that the FCC will impose those rules retroactively such that they would eliminate whatever liability RPM faces for its past practices."). As to the second factor, the FCC has already addressed the definition of ATDS twice (*see 2003 and 2008 Orders*), and courts have overwhelmingly held that 'called party' does not mean 'intended recipient.' Accordingly, any change to either issue is likely to be substantive rather than clarifying. *See Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 102, 102 n. 5 (N.D. Ill. 2013) ("[T]he Court fails to see how the petition requests anything less than for the FCC to overturn the clear language of the *2008 TCPA Order*. The *2008 TCPA Order* specifically ruled that debt collectors may not use predictive dialers to call cellphones unless the wireless phone number was provided by the subscriber in connection with the existing debt. Therefore, the FCC petitioners have not really asked for a clarification but for a change in the existing regulations. A change in an agency's existing regulations is presumed to not be retroactive.") (citations omitted). The Court should not delay Plaintiff's justice based on some chance that the FCC does address the petitions and does so with retroactive effect.

### IV.     A Stay Pursuant to Court's Inherent Authority is Not Warranted

Alternatively, GE asks the Court to stay pursuant to the Court's inherent authority. A party requesting a stay pursuant to a court's inherent authority "must show 'a clear case of hardship or inequity in being required to go forward.'" *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 283 F. Supp. 2d 612, 614 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936)); *see also Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991) ("[M]ovant bears a heavy burden of showing necessity for the stay."). GE fails to

show that such authority is correctly exercised here. First, it is entirely speculative whether a stay will simplify issues or promote judicial economy. Second, GE does not and can give no indication how long a stay would last. And third, justice delayed for the Plaintiff is indeed a harm.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks the Court to deny Defendant's Motion to Stay.

Dated: September 15, 2014                  Respectfully submitted,

                                         By:   *Sergei Lemberg*
                                                   Sergei Lemberg, Esq.
                                                   LEMBERG LAW LLC
                                                   1100 Summer Street, 3rd Floor
                                                   Stamford, Connecticut 06905
                                                   Telephone: (203) 653-2250
                                                   Facsimile: (203) 653-3424
                                                   *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

   I hereby certify that on this, the fifteenth day of September, 2014, I electronically filed the foregoing through the CM/ECF system which sent notice of such filing to the following:

Laura J. Babcock, Esq.
Zeichner Ellman & Krause LLP
35 Mason Street
Greenwich, Connecticut 06830

Henry Pietrkowski
Reed Smith LLP - Chicago
10 South Wacker Dr., 40th Floor
Chicago, IL 60606-7484

Pierre-Yves Kolakowski
Zeichner, Ellman & Krause
35 Mason St.
Greenwich, CT 06830

              */s/ Sergei Lemberg*
              Sergei Lemberg